IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| TRANCE KALE | : | NO.  09-264-3 |

## MEMORANDUM

**Padova, J.**                                                                    **April 26, 2010**

## I.     BACKGROUND

Trance Kale was charged in a Superseding Indictment with one count of conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a) (Count One); five counts of interference with interstate commerce by robbery (Hobbs Act robbery) and aiding and abetting, in violation of 18 U.S.C. §§ 1951(a) and 2 (Counts Two, Four, Seven, Nine, and Eleven); five counts of using and carrying a firearm during and in relation to a crime of violence and aiding and abetting, in violation of §§ 18 U.S.C. 924(c)(1) and 2 (Counts Three, Five, Eight, Ten, and Twelve); and two counts of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1) (Counts Six and Thirteen).  The charges arose out of Kale's alleged participation in the armed robberies of Davis Pharmacy on November 10 and 11, 2008, Polanco Grocery on November 13, 2008, Ana Grocery on November 17, 2008, and Haussmann's Pharmacy on November 18, 2008.

On October 9, 2009, a jury convicted Kale of the conspiracy charge and the charges arising out of the Haussmann's Pharmacy and second Davis Pharmacy robberies (Counts One, Four, Five, Six, Eleven, Twelve, and Thirteen).  At the close of the Government's case, Kale moved under Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal, which we denied.  Kale now moves for a judgment of acquittal or for a new trial under Rules 29(c) and 33 of the Federal Rules

of Criminal Procedure.  For the following reasons, we deny the Motion.

## II.   LEGAL STANDARD

In deciding a motion for judgment of acquittal pursuant to Rule 29, a court must view all of the evidence introduced at trial in the light most favorable to the Government and uphold the verdict so long as *any* rational trier of fact "'could have found proof of guilt beyond a reasonable doubt based on the available evidence.'"  United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002) (quoting United States v. Wolfe, 245 F.3d 257, 262 (3d Cir. 2001)).  "The court is required to 'draw all reasonable inferences in favor of the jury's verdict.'"  Id. (quoting United States v. Anderskow, 88 F.3d 245, 251 (3d Cir. 1996)).  The court may not "usurp the role of the jury" by weighing the evidence or assessing the credibility of witnesses.  United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005) (citing United States v. Jannotti, 673 F.2d 578, 581 (3d Cir. 1982) (en banc); and 2A Charles A. Wright, Federal Practice & Procedure (Crim. 3d) § 467, at 311 (2000)).  Thus, the defendant bears an "'extremely high'" burden when challenging the sufficiency of the evidence supporting a jury verdict, United States v. Iglesias, 535 F.3d 150, 155 (3d Cir. 2008) (quoting United States v. Lore, 430 F.3d 190, 203-04 (3d Cir. 2005)), and the Government "may defeat a sufficiency-of-the-evidence challenge on circumstantial evidence alone," id. at 156 (citing United States v. Bobb, 471 F.3d 491, 494 (3d Cir. 2006)).  A finding of insufficiency therefore "should 'be confined to cases where the prosecution's failure is clear.'"  Smith, 294 F.3d at 477 (quoting United States v. Leon, 739 F.2d 885, 891 (3d Cir. 1984)).

Pursuant to Rule 33, we may grant a new trial upon the defendant's motion "if the interest of justice so requires."  Fed. R. Crim. P. 33.  "'Whether to grant a Rule 33 motion lies within the district court's sound discretion.'"  United States v. Ortiz, 182 F. Supp. 2d 443, 446 (E.D. Pa. 2000)

(citation omitted).   A court must grant a motion for new trial if it finds that there were cumulative errors during the trial that, "'when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial.'"   United States v. Copple, 24 F.3d 535, 547 n.17 (3d Cir. 1994) (quoting United States v. Thornton, 1 F.3d 149, 156 (3d Cir. 1993)).   In evaluating a Rule 33 motion, we do not view the evidence favorably to the Government, but rather exercise our own judgment in evaluating the Government's case.   United States v. Johnson, 302 F.3d 139, 150 (3d Cir. 2002).   "However, even if a district court believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted.'"   United States v. Silveus, 542 F.3d 993, 1004-05 (3d Cir. 2008) (quoting Johnson, 302 F.3d at 150).

## III.   DISCUSSION

### A.   The Motion for Judgment of Acquittal

Kale seeks a judgment of acquittal on all counts of conviction on the ground that there was insufficient evidence to prove that he was involved in the conduct charged in the Superseding Indictment.   We address each count of conviction below.

#### 1.   Counts Four and Eleven: Hobbs Act robbery

Kale argues that there was insufficient evidence to support his conviction of interference with interstate commerce by robbery, or Hobbs Act robbery, and emphasizes that the Government failed to produce testimony other than from his co-defendants that identified him as one of the robbers. Kale further argues that the only evidence implicating him in the robberies was the testimony of his three co-defendants, Aaron Conquest, James Heath, and Kerry Young, who cooperated with the Government in exchange for the Government's recommendation of reduced sentences.   Additionally,

Kale argues that the Government's evidence with respect to the impact of his actions on interstate commerce, which he contends consisted only of invoices showing that Davis Pharmacy purchased controlled substances from a pharmaceutical supplier in New Jersey, was insufficient to prove that his actions affected interstate commerce.

The Hobbs Act provides as follows:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined . . . or imprisoned . . . or both.

18 U.S.C. § 1951(a).  The statute further defines "robbery" as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining."  18 U.S.C. § 1951(b)(1).  To establish criminal liability under an aiding and abetting theory, the Government must prove that (1) another person committed the underlying substantive offense – that is, interference with interstate commerce by robbery – and (2) the defendant "'knew of the substantive-offense commission and acted with the intent to facilitate it.'"  United States v. Cartwright, 359 F.3d 281, 287 (3d Cir. 2004) (quoting United States v. Salmon, 944 F.2d 1106, 1113 (3d Cir. 1991)).

We find that the Government introduced sufficient evidence at trial to show that the robberies of Davis Pharmacy on November 11 and Haussmann's Pharmacy on November 18 involved the taking of property by force, violence, or fear of injury.  Eliot Weinberg, a co-owner of Davis Pharmacy, was present on the morning of November 11, and testified that three individuals came

4

into the pharmacy, brandished a shotgun and a handgun, demanded specific drugs, and stole money and a laptop computer.  (9/22/09 N.T. Excerpt at 4-9.)[1]  Edward Tanack, another co-owner of Davis Pharmacy, was also present on the morning of November 11, and testified that three men came into the pharmacy, brandished a sawed-off shotgun and a handgun, took money from the cash register, and demanded drugs.  (9/22/09 N.T. at 61-63.)  Edward Sherman, a pharmacist at Haussmann's Pharmacy, testified that on November 18, a group of robbers pointed guns at the employees and customers in the store, demanded and took a variety of drugs, and hit him in the head with a handgun.  (9/23/09 N.T. at 151-52.)

We also find that the Government presented sufficient evidence to show that Kale acted as a getaway driver for both the November 11 Davis Pharmacy and November 18 Haussmann's Pharmacy robberies and entered Davis Pharmacy in conjunction with the November 11 robbery. Conquest, Heath, and Young testified that they committed the robberies with Kale, that Kale used his girlfriend's car to drive them to the stores they robbed, and that they carried guns, one of which Kale supplied, during the robberies.  (9/22/09 N.T. Excerpt at 93, 95, 102-03, 104, 108-09; 9/23/09 N.T. at 55, 78-79, 82, 91, 127, 168, 177, 180-81.)  Although Kale suggests that we should not credit his co-defendants' testimony because they had incentive to provide helpful testimony in exchange for better plea deals or leniency at sentencing, we may not evaluate the credibility of witnesses.

---

[1] The audio recording corresponding to the portions of Kale's trial that took place on September 22, 24, 25, and 29 was not initially transcribed in its entirety.  When citing to the first set of transcripts for these four days (Docket Nos. 126, 128-30), we shall refer to the transcript as "[Date] N.T. Excerpt."  When citing to the second set of transcripts for those four days (Docket Nos. 185-88), we will refer to the transcript as "[Date] N.T."  The audio recordings of the voir dire portion of the trial conducted on September 21 and the testimony conducted on September 23 were transcribed in their entirety in the first instance (Docket Nos. 92, 127), and we shall refer to those transcripts as "[Date] N.T."

Brodie, 403 F.3d at 133 ("Courts must be ever vigilant in the context of [Federal Rule of Criminal Procedure] 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting [their] judgment for that of the jury."). We therefore will not accept Kale's invitation to discount the testimony of Conquest, Heath, and Young simply because they pled guilty and cooperated with the Government. Moreover, the Government presented evidence from other sources that showed Kale's participation in the robberies. Kale's mother and sister both testified that upon returning to the Kale residence after the Davis Pharmacy robbery on November 11, Kale and his co-defendants bragged about doing a "sting." (9/22/09 N.T. Excerpt at 46, 69-70.) The Government also presented testimony from Joseph Buonanno, who stated that he purchased stolen pills from Kale, who told him that he was stinging pharmacies. (9/24/09 N.T. Excerpt at 54.)

Finally, contrary to Kale's argument, we find that there was ample evidence that the robberies interfered with interstate commerce. It is well established in this Circuit that the Government need not prove a substantial or even an actual effect on interstate commerce to support a Hobbs Act robbery conviction, but rather need only show that the underlying robbery potentially caused a de minimis effect on interstate commerce. See United States v. Urban, 404 F.3d 754, 765 (3d Cir. 2005). Additionally, the finder of fact "'may infer that interstate commerce was affected to some minimal degree from a showing that the business assets were depleted.'" United States v. Haywood, 363 F.3d 200, 210 (3d Cir. 2004) (quoting United States v. Zeigler, 19 F.3d 486, 493 (10th Cir. 1994)). Here, the Government adduced evidence that more than met this standard. In addition to invoices showing that Haussmann's Pharmacy purchased controlled substances from a pharmaceutical supplier in New Jersey, the Government produced testimony of employees from both Davis Pharmacy and Haussmann's Pharmacy that they ordered drugs from distributors in New Jersey

around the time of the robberies. (9/22/09 N.T. Excerpt at 14; 9/23/09 N.T. at 159.) Edward Tanack

testified that the robbers ripped out the telephone lines during the November 11 Davis Pharmacy

robbery. (9/22/09 N.T. at 63.) Additionally, Ed Sherman testified that Haussmann's Pharmacy

installed operable surveillance cameras and began employing a security guard following the robbery.

(9/23/09 N.T. at 157.) This evidence shows that both pharmacies engaged in interstate commerce,

and supports the inference that the pharmacies' business assets were depleted by the need to replace

stolen merchandise and introduce new security measures following the robberies.

Viewing the evidence introduced at trial in the light most favorable to the Government, we

conclude that a rational finder of fact could have found proof beyond a reasonable doubt that Kale

participated in or aided and abetted the Davis Pharmacy and Haussmann Pharmacy robberies. We

therefore deny Kale's Motion for Judgment of Acquittal with respect to Counts Four and Eleven.[2]

2.   Count One: Conspiracy to commit Hobbs Act robbery

Kale argues that the evidence did not show beyond a reasonable doubt that he conspired to

interfere with interstate commerce by robbery. Instead, Kale contends that the trial testimony

established that it was Aaron Conquest's idea to commit the robberies in order to satisfy his drug

addiction, and that Conquest shared the idea not with Kale but with Kerry Young, who agreed to

commit the charged robberies. "The Hobbs Act, by its own terms, encompasses the inchoate

offense[] of . . . conspiracy to" interfere with interstate commerce by robbery. Jannotti, 673 F.2d at

---

[2]Kale also argues that the Government's evidence against him was insufficient because the Government failed to present fingerprint or video surveillance evidence showing him at the scenes of the crimes. However, nothing requires the Government to present such evidence in order to prove its case beyond a reasonable doubt, see United States v. Jones, 169 F. App'x 737, 739 (3d Cir. 2006), and we find that the evidence the Government did present was sufficient to support Kale's convictions on Counts Four and Eleven.

592.  In order to prove a criminal conspiracy, the Government must establish a shared unity of

purpose, that the parties intended to achieve a common goal, and that they agreed to work together

toward that goal.[3]  United States v. Perez, 280 F.3d 318, 342 (3d Cir. 2002) (internal quotations

omitted) (quoting United States v. Mastrangelo, 172 F.3d 288, 292 (3d Cir. 1999)).  While the

Government must prove each element of a criminal conspiracy beyond a reasonable doubt, it may

do so entirely by circumstantial evidence.  United States v. Applewhaite, 195 F.3d 679, 684 (3d Cir.

1999) (citing United States v. McGlory, 968 F.2d 309, 321 (3d Cir. 1992)); Perez, 280 F.3d at 342-

43 (citations omitted).[4]

    We find that the Government presented sufficient evidence at trial to support the jury's

---

[3]The Government asserts that proof of a Hobbs Act conspiracy also requires proof of an overt act.  We disagree, and note that, while the United States Court of Appeals for the Third Circuit has not ruled on the issue, the majority of circuits to have done so have held that there is no such requirement.  See, e.g., United States v. Palmer, 203 F.3d 55, 63-64 (1st Cir. 2000); United States v. Pistone, 177 F.3d 957, 960 (11th Cir. 1999); United States v. Clemente, 22 F.3d 477, 480 (2d Cir. 1994); United States v. Clemente, 22 F.3d 477, 480 (2d Cir. 1994) (citations omitted).  Additionally, the Third Circuit has held that where the language of other conspiracy statutes has not expressly included an overt act requirement, courts should not infer such a requirement.  See, e.g., United States v. Fullmer, 584 F.3d 132, 160 n.13 (3d Cir. 2009) (noting no overt act requirement for proof of conspiracy to violate Animal Enterprise Protection Act) (citing Whitfield v. United States, 543 U.S. 209, 213 (2005)); United States v. Bey, 736 F.2d 891, 894 (3d Cir. 1984) (noting no overt act requirement for drug conspiracies under Controlled Substances Act).  There is no requirement of an overt act in the statute prohibiting Hobbs Act conspiracy.  See 18 U.S.C. § 1951(a).  The relevant case law from this District, however, is inconsistent.  Compare United States v. Mershon, Crim. A. No. 06-329-1, 2007 WL 4394442, at *4 (E.D. Pa. Dec. 13, 2007) (omitting overt act as element of Hobbs Act conspiracy), with United States v. Gilliard, Crim. A. No. 04-355-2, 2009 WL 4043288, at *6 (E.D. Pa. Nov. 20, 2009) (including an overt act among the elements of Hobbs Act conspiracy).  Notably, Kale does not contest this issue or focus on any overt act requirement in making his argument.  Nevertheless, we conclude that the Government has alleged and proven several overt acts with respect to the Hobbs Act conspiracy.  Consequently, we need not decide whether proof of a Hobbs Act conspiracy requires proof of an overt act.

[4]We also note that "'uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction.'"  Perez, 280 F.3d at 344 (quoting United States v. DeLarosa, 450 F.2d 1057, 1060 (3d Cir. 1971)).

conclusion that Kale conspired to commit Hobbs Act robbery.  As we described above, there was ample evidence that Kale was involved in the November 11th and November 18th robberies.  Indeed, the jury convicted Kale for his participation in those robberies.  Additionally, Kale's co-conspirators testified as to his role in the conspiracy.  Young testified that it was Kale's idea to rob Davis Pharmacy and that Kale called him on the morning of November 11 to tell him that he wanted to rob Davis Pharmacy.  (9/23/09 N.T. at 165, 168.)  Conquest and Young testified that prior to the Haussmann's Pharmacy robbery, Kale scouted out pharmacies to rob with them.  (Id. at 78, 181-82.) A reasonable finder of fact could have concluded from the available evidence that Kale knowingly joined with his co-conspirators in an agreement to interfere with interstate commerce by robbery. We therefore deny Kale's Motion for Judgment of Acquittal as to Count One.

2.      Counts Six and Thirteen: Possession with intent to distribute a controlled substance

As to Counts Six and Thirteen, Kale argues that the only testimony presented to show that he possessed and aided and abetted the possession of a controlled substance with intent to distribute was that of his co-defendants and Joseph Buonanno, a career drug addict who was facing the possibility of criminal charges and "had incredible incentive to fabricate his testimony to conform to the government's case." (Def's Mot. at 6.) However, this argument again ignores the well-settled rule, as stated above, that we may not weigh the evidence or evaluate witnesses' credibility, whatever their motives may be.  Applying this principle, we find that the Government presented sufficient evidence to prove beyond a reasonable doubt that Kale possessed a controlled substance with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1).  Aaron Conquest testified that Kale told him that he had a connection in New Jersey who would buy the stolen pills.  (9/23/09 N.T. at 68.)

Conquest further testified that he went to New Jersey with Kale and Young, where Kale sold the pills. (Id. at 68-69.)  Kerry Young also testified that he and Kale took the stolen pills to New Jersey, where Kale then sold them. (Id. at 172-73, 183.)  Additionally, Joseph Buonanno testified that Kale contacted him twice between Halloween and Thanksgiving in 2008 and made two trips to New Jersey to sell him generic Percocets. (9/24/09 N.T. Excerpt at 50, 64.)  We find that a rational finder of fact could reasonably conclude that Kale possessed and aided and abetted the possession of a controlled substance with intent to distribute.  Therefore, we deny Kale's Motion for Judgment of Acquittal as to Counts Six and Thirteen.

> 3.  Counts Five and Twelve: Use and carrying of a firearm during and in relation to a crime of violence

While Kale argues that he is entitled to a post-verdict judgment of acquittal on all counts of which he was convicted, he does not make any specific argument as to the sufficiency of the evidence against him with respect to Counts Five and Twelve.  Nonetheless, we note that in order to sustain a conviction for a violation of 18 U.S.C. § 924(c)(1)(A)(ii) on an aiding and abetting theory, the Government must show that (1) another person knowingly brandished a firearm during and in relation to the commission of a crime of violence, and (2) the defendant knew of the crime and willfully facilitated it.  18 U.S.C. § 924(c)(1)(A)(ii); Cartwright, 359 F.3d at 287.

As described above, the Government presented testimony from Kale's co-conspirators as well as from employees of the victimized pharmacies showing that the defendants brandished guns during the robberies.  The Government also presented evidence that Kale supplied a gun for the robberies. (9/22/09 N.T. Excerpt at 108-09.)  We conclude there is sufficient evidence to support the jury's finding that Kale used and carried, or aided and abetted the use and carrying of, a firearm during and

in relation to the Davis Pharmacy and Haussmann's Pharmacy robberies.  Therefore, we deny his Motion for Judgment of Acquittal as to Counts Five and Twelve.

B.     The Motion for New Trial

Kale argues that, in the alternative, he is entitled to a new trial pursuant to Rule 33. Specifically, he contends that the Court erred by (1) allowing Jeffrey Strohm, the Sprint Custodian of Records, to testify as an expert witness when the Government had failed to provide adequate pretrial notice pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) of its intent to call him to testify; (2) admitting the distributor invoices offered by the Government to show purchases of controlled substances made by the Davis Pharmacy and Haussmann's Pharmacy; and (3) charging the jury with an improper instruction regarding Kale's invocation of the right not to testify, following an objection by the Government.  We consider each of these arguments in turn.

1.     The Court's admission of Jeffrey Strohm's testimony

First, Kale argues that Jeffrey Strohm, the Sprint custodian of records, offered testimony "on the technical nature of cellular phone repolling data and interpreted that data for the jury" (Def.'s Mot. at 7), which constituted expert testimony.  Kale contends that the Government therefore should have disclosed a summary of that testimony prior to trial pursuant to Rule 16(a)(1)(G).  According to Kale, due to the Government's failure to disclose prior to trial that it intended to offer Strohm as an expert witness, defense counsel was unable to produce its own experts to offer counter-testimony or other evidence to introduce reasonable doubt as to the use of Kale's cellular phone, resulting in prejudice to Kale and denial of his Sixth Amendment right to a fair trial.

Pursuant to Rule 16(a)(1)(G), the Government must, at the defendant's request, provide the defendant with a written summary of any expert witness testimony the Government intends to use

during its case-in-chief at trial under Rules 702, 703, or 705 of the Federal Rules of Evidence.  If a witness does not testify as an expert, then any opinions or inferences he offers must be limited to those that "are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  With respect to the third requirement, "lay testimony must 'result[] from a process of reasoning familiar in everyday life,' as opposed to a process 'which can be mastered only by specialists in the field.'"  Donlin v. Philips Lighting N. Am. Corp., 581 F.3d 73, 81 (3d Cir. 2009) (quoting Fed. R. Evid. 701 advisory committee's note, 2000 Amendments).   However, a lay witness with "particularized knowledge by virtue of her experience . . . may testify – even if the subject matter is specialized or technical – because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702."  Id.

Strohm testified as a custodian of records for Sprint-Nextel Telecommunications.  (9/24/09 N.T. at 83-84.)  He stated that, as a custodian of records, he received a four-week training course to familiarize himself with the records system and its terminology and how the cellular towers operate, and had testified approximately sixteen times prior to Kale's trial.  (Id. at 84.)  In the course of his testimony, Strohm interpreted the records for cellular phones belonging to Aaron Conquest and Jonell Taylor, which the Government argued that Kale had used in connection with the robberies.  (Id. at 86, 93.)  With respect to several outgoing and incoming telephone calls appearing on the records, he identified the telephone number that initiated the call, the number that received the call, the time and duration of the call, and the location of the nearest cell tower that was used to make or receive the call.  (Id. at 94-105.)  During the course of the Government's direct examination of

Strohm, defense counsel expressed concerns about the scope of Strohm's testimony. At sidebar, he

made the following objection:

> MR. WEINSTEIN: Your Honor, the witness has been offered as a custodian of records. My earlier objection . . . is that the witness was testifying about a process as far as how calls are transmitted and received through the . . . cell system, which is far beyond the testimony that could be offered by the custodian of records. This witness has not been proffered as an expert. There's been no Rule 16. . . .

> THE COURT: Well, number one, nobody has asked for an expert opinion of this witness. Number two, I didn't hear that this witness was called for a limited purpose. What is this witness being called for?

> MS. COX: Your Honor, he's going to be called for . . . records, and he is not offered as an expert, because when you call a cell cite [sic] expert, they testify as to the particular site of the tower that it went off . . . on. . . . All he's going to do is say he's looking at these records, as he's trained to do, because he's testified 17 times for these kinds of records. He's basically going to show the records, the calls made, and I'm going to point him to maybe four calls. . . . So it's not expert opinion, your Honor.

> THE COURT: Okay. If there is an objection, I overrule it. The scope just outlined by the Government is perfectly acceptable.

(9/24/09 N.T. at 91-93.)

It is clear that the Government did not offer Strohm as an expert witness, nor did he testify

as such. As a custodian of records, he was authorized to testify as to the contents of the relevant

cellular telephone records, and explain the meaning of their contents to the jury.  See United States v. Garcia, 58 F. App'x 253, 256 (9th Cir. 2003) (citing NLRB v. First Termite Control Co., Inc., 646 F.2d 424, 427 (9th Cir. 1981)).  While the subject matter of the records may have been somewhat technical, Strohm possessed "particularized knowledge by virtue of [his] experience" as a custodian of records.  Donlin, 581 F.3d at 81.  His explanation of the records was based on the knowledge he acquired while serving as a custodian of records, not on specialized knowledge within the scope of Rule 702.  Moreover, Strohm did not offer any opinion testimony, make predictions, or answer hypothetical questions.  He merely explained what two sets of cellular telephone records showed with respect to a number of outgoing and incoming calls, which did not constitute expert testimony.  See United States v. Feliciano, 300 F. App'x 795, 801 (11th Cir. 2008) (holding that police officer's testimony regarding locations of cell towers was offered to establish origination location of telephone call, was based upon officer's review of cellular telephone records, and did not constitute expert testimony).

Even if Strohm had testified as an expert witness, we cannot say the grant of a new trial would be an appropriate remedy.  If a party fails to comply with the discovery rules, the court may order it to comply, grant a continuance, exclude the undisclosed evidence, or "enter any other order that is just under the circumstances."  Fed. R. Crim. P. 16(d)(2).  "In determining an appropriate remedy, a district court should consider the reasons for the party's delay in producing the materials, including whether it acted intentionally or in bad faith, and the degree of prejudice to the opposing party."  United States v. Lee, 573 F.3d 155, 161 (3d Cir. 2009) (citing United States v. Ganier, 468 F.3d 920, 927 (6th Cir. 2006); and Gov't of Virgin Islands v. Fahie, 419 F.3d 249, 258-59 (3d Cir. 2005)).  Kale contends that he was prejudiced because the Government's failure to provide advance

notice of Strohm's testimony precluded him from producing counter-experts to demonstrate the unreliability or irrelevance of the Sprint data, as well as from producing evidence to create reasonable doubt as to whether he was the individual to use the phone attributed to him at the relevant times.  However, the Government had produced the cellular telephone records about which Strohm testified prior to the final pretrial conference, and defense counsel had notice at least as early as the final pretrial conference that the Government intended to call Strohm to testify as a custodian of records.  (9/16/09 N.T. at 26-27.)  It is clear that Kale was aware of the existence of the relevant telephone records well in advance of trial, even if he was unaware of the precise contours of Strohm's testimony, which was offered merely to relate the information contained in the records. Accordingly, we conclude that Kale has not adequately demonstrated prejudice sufficient to merit a new trial.

2.      The Court's admission of distributor invoices

Next, Kale argues that the Court erred in admitting distributor invoices prepared by AmeriSource Bergen, a supplier of controlled substances, and received by Davis Pharmacy and Haussmann's Pharmacy, because the Government failed to establish through witness testimony that the invoices were made at or near the time of the acts or events described in them by a person with knowledge.  He asserts that this error was prejudicial because the invoices constituted the Government's primary evidence that Davis Pharmacy and Haussmann's Pharmacy were involved in interstate commerce.  Kale's argument, however, encounters several insurmountable obstacles. First, while we initially admitted the Davis Pharmacy invoices based upon the testimony of Eliot Weinberg (9/22/09 N.T. Excerpt at 16-17), and the Haussmann's Pharmacy invoices based upon the testimony of Ed Sherman (9/23/09 N.T. at 157-59), we later struck the Davis Pharmacy invoices

15

from the record and instructed the jury to disregard them.  (9/25/09 N.T. at 2.)  Kale's objection to

the Davis Pharmacy invoices is thus moot.  Second, we admitted the invoices from Haussmann's

Pharmacy into evidence without any objection from defense counsel.  (9/23/09 N.T. at 159.)  As his

counsel raised no objection to the Haussmann's Pharmacy invoices, Kale has waived his right to

object in a post-trial motion to their admission.  See United States v. Swinton, Crim. A. No. 94-008-

01, 1997 WL 842958, at *6 (E.D. Pa. Mar. 5, 1997) (citing United States v. Bamberger, 456 F.2d

1119, 1131 (3d Cir. 1972)).

Third, even assuming Kale's counsel had timely objected to the Haussmann's Pharmacy

invoices, Sherman's testimony provided a proper foundation for their admission.  Under the business

records exception to the hearsay rule, a business record such as an invoice is admissible if the

testimony of a custodian or other qualified witness establishes that the record was "made at or near

the time by, or from information transmitted by, a person with knowledge, if kept in the course of

a regularly conducted business activity, and if it was the regular practice of that business activity to

make the . . . record . . . ."  Fed. R. Evid. 803(6).  Although the United States Court of Appeals for

the Third Circuit has not articulated a precise standard with respect to the admission of third-party

records, it has indicated that a witness who has not himself prepared a business record may

nonetheless provide a basis for the admission of the third-party record through testimony that he has

incorporated the record into his own business records, and that the record is accurate and he has

relied on its accuracy.  See Falco v. Alpha Affiliates, Inc., Civ. A. No. 97-494, 2000 WL 727116,

at *15 (D. Del. Feb. 9, 2000) (summarizing Third Circuit case law and stating that third-party records

incorporated into the business records of an entity are admissible on the testimony of a qualified

witness of that entity under Federal Rule of Evidence 803(6) if (1) "the entity . . . regularly

incorporate[s] the third party records into its own records kept in the regular course of business activity;" (2) "the entity . . . rel[ies] on the accuracy of the third party records;" and (3) "the witness [is] able to vouch for the accuracy of the third party records"); see also United States v. Sokolow, 91 F.3d 396, 403-04 (3d Cir. 1996) (admitting insurance claims adjuster's records that were derived from records supplied by a third party insurer where adjuster's employee testified that the adjuster was in the practice of incorporating the insurer's records into its own, relied on the records, and verified their accuracy).

Here, Sherman testified regarding AmeriSource Bergen invoices whose dates indicated that they were produced shortly before and immediately after the Haussmann's Pharmacy robbery. (9/23/09 N.T. at 157-58.)   He testified that Haussmann's Pharmacy kept the invoices and incorporated them into its own records in the ordinary course of its business activity and explained the pharmacy's record-keeping system with respect to the invoices.  (Id. at 157-59.)  Sherman's testimony further made clear that Haussmann's Pharmacy relied on the accuracy of the AmeriSource invoices to track the drugs the pharmacy had ordered and received.  (Id.)  Sherman's testimony thus provided the requisite foundation for the admission of the invoices under the business records exception to the hearsay rule.

Fourth, we cannot say that the admission of the Haussmann's Pharmacy invoices had a substantial influence on the outcome of the trial.  While the Government offered the invoices to show that the robberies affected interstate commerce, the invoices were not the Government's only evidence on this point.  As we have already noted, testimony from the pharmacies' owners and employees also established that the pharmacies purchased controlled substances from a wholesaler located in New Jersey and took security measures following the robberies that would have depleted

their business assets.   Therefore, we conclude that Kale has not shown that our admission of the

invoices amounted to a miscarriage of justice that would require a new trial.

3.       The Court's cautionary instruction regarding Kale's right not to testify

Finally, Kale argues that the Court gave the jury an improper instruction that implicated his

Fifth Amendment right not to testify at trial and was sufficiently prejudicial to merit a new trial.

Kale's description of our instruction and the events that precipitated it, however, is not entirely

accurate.   During his closing argument, defense counsel made the following statement:

> Let me deal right here and now with one thing.   I cut this trial short
> by not calling Trance Kale to the stand.   The Court will instruct that
> when you go into that jury room, you cannot [consider] the fact that
> Trance Kale did not testify in any way in arriving at your verdict.   If
> you mention it in the jury room, if you even think about it, you will
> be depriving him of a fair trial, and depriving him of the
> Constitutional Rights afforded to all of us.   If you hold it against him,
> you will also be violating your oath.   And I know there's not one of
> you here that wants to do that.

(9/29/09 N.T. Excerpt at 3.)

Following defense counsel's closing argument, the Government requested outside the

presence of the jury that the Court give a curative instruction in order to preclude any possible

inference the jury might make in light of defense counsel's statements that defense counsel, not Kale,

made the decision not to have Kale testify.   (9/29/09 N.T. at 63-65.)   Defense counsel objected to

the curative instruction on the basis that it would draw inappropriate attention to the fact that Kale

did not testify, and requested in the alternative that the Court only advise the jury regarding Kale's

decision not to testify in the context of our final jury instructions.   (Id. at 65.)   However, we granted

the Government's request and issued the following instruction:

> You'll recall that during the course of this case I did charge you or

18

> instruct you . . . that there's a presumption of innocence with respect
> to a defendant, and that means that a defendant has no burden or
> obligation to present any evidence at all, nor does the defendant have
> any burden or obligation to take the witness stand.  It's his
> constitutional privilege not to testify or even call any evidence if he
> so chooses in that regard. . . .
>
> I recall that Defense counsel told you that he didn't call the defendant
> to the stand in this case, and that he cut the trial short in that regard.
> . . .
>
> [T]hat comment has absolutely nothing to do with respect to a
> defendant's constitutional right not to testify, and you should
> disregard that comment in all respects.  It's a comment that has
> nothing to do with any decision that you should take into
> consideration in connection with what happened in this case.
>
> The defendant had a right, a constitutional right not to take the
> witness stand, and that was his decision to make, and so be it.  Don't
> connect that in any way, shape, or form with . . . defendant counsel's
> statement that he . . . made that decision not to call the defendant to
> the stand, and that he cut the trial short in that regard.

(Id. at 66-67.)

Subsequently, in the final charge to the jury, we gave the following instruction:

> Members of the jury, in this case the Defendant, Mr. Kale, did not
> testify.  The defendant has an absolute constitutional right not to
> testify.  The burden of proof remains with the prosecution throughout
> the entire trial and never shifts to a defendant.  The defendant is never
> required to prove that he is innocent.  You must not attach any
> significance to the fact that this defendant did not testify.  You must
> not draw any adverse inference against him because he did not take
> the witness stand.  Do not consider, for any reason at all, the fact that
> the defendant did not testify.  Do not even discuss that fact during
> your deliberations or let it influence your decision in any way.

(Id. at 112-13.)  The language of this instruction is nearly identical to the Third Circuit Model Jury

Instructions to which the parties stipulated prior to trial.  Moreover, the prior curative instruction

complemented and in no way contradicted this Third Circuit-sanctioned instruction.  Kale

nevertheless argues that our curative instruction implicated his Fifth Amendment right not to testify. However, our curative instruction merely instructed the jury that Kale had a right not to testify and explained that his counsel's comment in his closing argument should not itself be taken as a comment on his right.  Furthermore, our instruction to the jury to disregard defense counsel's comment was entirely proper, as the comment contradicted the principles that it is solely the defendant's decision whether to testify at trial, and that defense counsel cannot waive the right not to testify on behalf of a client.  United States v. Leggett, 162 F.3d 237, 245 (3d Cir. 1998); see also Rock v. Arkansas, 483 U.S. 44, 53 (1987).  In light of the fact that our curative instruction was wholly consistent with our subsequent instruction regarding Kale's constitutional right not to testify, we are confident that our curative instruction did not contribute to the jury's guilty verdicts.

We find that our ruling with respect to Jeffrey Strohm's testimony, admission of the Haussmann's Pharmacy distributor invoices, and cautionary instruction regarding Kale's right not to testify were not errors, much less errors that, either individually or combined, would have a substantial influence on the outcome of the trial or constitute a miscarriage of justice.  Accordingly, we deny Kale's Motion for a New Trial.

## IV.    CONCLUSION

For the foregoing reasons, Kale's Motion for Judgment of Acquittal or New Trial is denied. An appropriate Order follows.

BY THE COURT:


 /s/ John R. Padova
John R. Padova, J.